# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003



EXHIBIT
B-4

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1. <u>IN GENERAL.</u> In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. <u>DEFAULT IN PAYMENT OF CONTRIBUTIONS.</u> Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. <u>REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.</u> The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

**ADDENDUM  A**

**RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
AND PRODUCED FOR AUDITS**

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

### LABORERS' PENSION AND WELFARE FUNDS

### POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers**. Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

1

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

AGREEMENT AND DECLARATION OF TRUST
ESTABLISHING
THE CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
TRAINING TRUST FUND

THIS AGREEMENT AND DECLARATION OF TRUST, made and entered into as of the 1st day of June, 1986 by and between THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, A.F.L.-C.I.O., representing its affilated Local Unions and the members thereof (the "Council") and the BUILDERS' ASSOCIATION OF CHICAGO, the UNDERGROUND CONTRACTORS ASSOCIATION, and the ILLINOIS ROAD BUILDERS' ASSOCIATION, and all other employer associations (the "Associations") who have hereto bargained or may hereafter bargain or enter into collective bargaining agreements or other agreements with the Union, its local affiliates, or with representatives of this Trust, for and on behalf of themselves and their respective members who by virtue of their said membership or otherwise are parties to collective bargaining agreements with the Union or any of its local affiliates or are parties to this Agreement or are otherwise bound to the provisions hereof as hereinafter provided, and other employers in the building and construction industry who may not be members of any association but who are included in the term "Employers" (as defined in Section 2 of ARTICLE I) and agree to be bound by this Agreement or who are otherwise so bound as provided as set forth in Section 2 of ARTICLE I;

WITNESSETH:

(1)  The Employers are parties to a collective bargaining agreement, or supplements thereto, with the Council which requires

-1-

EXHIBIT
B-5

Employer contributions of a certain sum per hour per Employee to a training fund provided in a program to be created for partici-pating employees and established by this trust agreement.

(2)  the parties have agreed that such contributions shall be payable to and be deposited in the Trust Fund created and established by this Trust Agreement.

NOW, THEREFORE, in consideration of the premises and in order to establish and provide for the maintenance of said Trust Fund to be known as "THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND" hereinafter referred to as the "Trust Fund," it is mutually understood and agreed as follows.

## ARTICLE I

### Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Trust Agreement.

### Section 1.  WRITTEN AGREEMENT

The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to this Trust together with any modification, amendment or renewals thereof, including but not limited to Collective Bargaining Agreements, memoranda of understanding which incorporate by reference Collective Bargaining Agreements or this Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Agreement.

signatory association, nor any officers, agent, employee or
committee member of the Employers, or of any signatory association
shall be liable to make contributions to the Fund or be under any
other liability to the Fund or with respect to the Training
Program, except to the extent that he may be an individual
Employer required to make contributions to the Fund with respect
to his or its own individual or joint venture operations, or to
the extent he may incur liability as a Trustee, as hereinafter
provided.  The liability of any individual Employer to the Fund,
or with respect to the Training Program shall be limited to the
payments required by any written agreement with respect to his or
its individual or joint venture operations, and in no event shall
he or it be liable or responsible for any portion of the
contributions due from other individual Employers with respect to
the operations of such Employers.  The individual Employers shall
not be required to make  any further payments or contributions to
the cost of the operations of the Fund or of the Training Program,
except as provided in Section 8 of this Article.

Section 6.  Neither the Employers, any signatory association,
any individual Employer, the Council, nor any employee shall be
liable or responsible for any debts, liabilities or obligations of
the Fund or the Trustees.

Section 7.  Contributions to the Fund shall be due and
payable to the principal office of the Fund and shall be made in
regular monthly installments except as otherwise herein provided
in Section 9 of this Article II.  Each contribution to the Fund
shall be made promptly, and in any event on or before the 10th day

of the calendar month in which it becomes due and payable. Each
monthly contribution shall include all payments which have accrued
in the interim for work performed up to the close of the
Employer's payroll period ending closest to the last day of the
preceding calendar month. Each monthly contribution shall be
accompanied by a report in a form prescribed by the Board of
Trustees.

Section 8. The parties recognize and acknowledge that the
regular and prompt payment of Employer contributions and reports
to the Fund are essential to the maintenance of the Fund and that
it would be extremely difficult, if not, impracticable, to fix the
actual expense and damage to the Fund and to the Training Program
which would result from the failure of an Employer to pay such
monthly contributions in full within the time provided above.
Therefore, if any Employer is delinquent in remitting its
contributions within the time specified in Section 7 of this
Article, the amount of damage to the Fund and Training Program
resulting from failure to make reports or pay contributions within
the time above specified shall be presumed to be the sum of ten
percent (10%) of the amount of the contribution due for each
delinquent report or contribution. This amount shall be added as
liquidated damages upon the day immediately following the date on
which the report or the contribution or contributions become
delinquent. Delinquent contributions and penalties shall also bear
interest at a rate up to the prime rate of interest as recog-
nized by the First National Bank of Chicago or such other lawful
amount as determined by the Trustees from the due date until

delinquency is totally satisfied.  The Trustees, however, in their
discretion, for good cause (Trustees shall have sole right to
determine what shall constitute good cause) shall have the right and
power to waive all or any part of any sums due the Fund as liquidated
damages.  Failure by any Employer to make the required payments
hereunder shall be deemed a breach of the written agreement
by the Employer and be subject to economic action by the Council in
addition to the other remedies as provided herein.  The Trustees may,
at their option, also take legal action to collect all delinquent
amounts owing to the Fund, and parties agree that if the delinquent
account of any Employer is referred to an attorney for collection,
such Employer shall immediately become liable for a reasonable sum
for the attorneys' fee together with an amount equal to all costs
incurred by the Trustees in commencing or prosecuting legal action in
any Court.  In such legal action, venue shall be laid at Cook County,
Illinois, as the Fund is administered in such county.

Section 9.  In the case of certain Employers who have defaulted
on payments in the past, or who otherwise give the Trustees
reasonable cause to feel insecure as to future contributions, the
Trustees shall have the power to require a bond for the payment of
contributions.

ARTICLE III

Board of Trustees

Section 1.  Except as otherwise specifically provided, the
Fund shall be operated and administered by a Board of Trustees
whose membership shall consist of three persons appointed as
trustees by the Association (known as the "Association Appointed

DISTINCTIVE CONCRETE LTD.
CASE # CHLAB-0707-1434
ACCOUNT # 31001
OCTOBER 1, 2005 THROUGH SEPTEMBER 30, 2007

EXHIBIT
B-6



November 8, 2007

566 W. Lake St.
Suite 3 West
Chicago, IL  60661-1414
(312) 655-0037
Fax (312) 655-9145

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
Jean Mashos, Director
11465 Cermak Road
Westchester, Illinois 60154

Re:     Distinctive Concrete Ltd.
        Case # CHLAB-0707-1434
        Acct # 31001

Gentlemen:

In accordance with your instructions we have performed certain agreed upon procedures to the
payroll records presented for our inspection by the above mentioned employer. The purpose of
the inspection was to determine the accuracy of the employer's monthly contributions to the
Laborers' Pension Fund and Health and Welfare Department of the Construction and General
Laborers' District Council of Chicago and Vicinity for the period October 1, 2005 through
September 30, 2007. This agreed upon procedure engagement was performed in accordance with
the standards established by the American Institute of Certified Public Accountants.  The
sufficiency of these procedures is solely the responsibility of the Laborers' Pension Fund and
Health and Welfare Department of the Construction and General Laborers' District Council of
Chicago and Vicinity.

**This audit should be considered an exit audit.  The contractor has not had any laborers on
payroll since December 2006 but has not yet filed final tax returns.**

Attached hereto are yearly schedules showing the detail of the under-reported hours and
computation of the amounts due to the Funds. The findings consist of under-reported wages and
hours of individuals on payroll doing covered work that have been previously reported to the
Funds.

Our examinations indicated that the employer owes the following amounts for the period audited,
exclusive of interest.

|          |          | Amount Due |
|----------|----------|-----------:|
| Welfare  | $        | 572.80     |
| Pension  |          | 351.20     |
| Training |          | 13.60      |
| IAF      |          | 5.60       |
| LDCLMCC  |          | 9.60       |
| LECET    |          | 4.80       |
| Dues     |          | 42.74      |
|          | Total    | $    1,000.34 |

Members American Institute of Certified Public Accountants

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
November 8, 2007
Page Two
Case # CHLAB-0707-1434

We were not engaged to, and did not, perform an examination, the objective of which would be the expression of an opinion on the accompanying report. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

We shall be pleased to furnish any additional information desired and have attached our bill for services.

Very truly yours,

LEVINSON SIMON & SPRUNG P.C.
Howard B. Levinson, CPA, MBA

HBL/lab

Enclosures

cc:    Denise Ayala

**Levinson Simon & Sprung, P.C.**
Reconciliation of Differences Per Year

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
DISTINCTIVE CONCRETE LTD.
Case #: ChLab-0707-1434
Audit Period: 10/1/2005 thru 9/30/2007
Fiscal Year End: May

Manager: Betar, Leia
Auditor: Karris, Reid

| Fiscal Year Ending | | | |
|---|---|---|---|
| | MAY 2007 | MAY 2006 | Total |
| Dollars Not Reported | 1,206.00 | 1,236.16 | 2,442.16 |
| Hours Not Reported | 40.00 | 40.00 | 80.00 |
| **Dollar Amount Due** | | | |
| Welfare Fund | 298.40 | 274.40 | 572.80 |
| Pension Fund | 193.60 | 157.60 | 351.20 |
| Training Fund | 6.80 | 6.80 | 13.60 |
| IAF | 2.80 | 2.80 | 5.60 |
| LDCLMCC | 4.80 | 4.80 | 9.60 |
| LECET | 2.40 | 2.40 | 4.80 |
| Dues | 21.11 | 21.63 | 42.74 |
| **Total** | **529.91** | **470.43** | **1,000.34** |

| | |
|---|---|
| Liquidated Damages | 724.44 |
| Dues Penalties | 157.52 |
| Dues Shortages | 8.25 |
| Audit Fee | 830.07 |
| **Total Amount Due** | **2,720.62** |

Page 1

# Levinson Simon & Sprung, P.C.
## Detail Report
### Report Date: 11/8/2007

Page 2
Employees

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
DISTINCTIVE CONCRETE LTD.
Case #: ChLab-0707-1434
Contract: CCA & *CCA

Year Ended: May, 2006

Contributions computed by Amount per Hour

| SSN | Name | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | *Nitti, Vito | | | | | 40.00 | | | | | | | | 40.00 |
| | Total Hours | | | | | 40.00 | | | | | | | | 40.00 |

## Rate Table

| | | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | $6.8600 | | | | | 274.40 | | | | | | | | 274.40 |
| Pension Fund | $3.9400 | | | | | 157.60 | | | | | | | | 157.60 |
| Training Fund | $0.1700 | | | | | 6.80 | | | | | | | | 6.80 |
| IAF | $0.0700 | | | | | 2.80 | | | | | | | | 2.80 |
| LDCMCC | $0.1200 | | | | | 4.80 | | | | | | | | 4.80 |
| LECET | $0.0600 | | | | | 2.40 | | | | | | | | 2.40 |
| Total | | | | | | 448.80 | | | | | | | | 448.80 |

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 11/8/2007**

Page 3
Employees

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
DISTINCTIVE CONCRETE LTD.
Case #: ChLab-0707-1434
Contract: CCA & *CCA          Year Ended: May, 2006

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 354?6-1471 | *Lazzara, Gaetano | | | | | 15.08 | | | | | | | | 15.08 |
| 326?0-7058 | *Nitti, Vito | | | | | 1,206.00 | | | | | | | | 1,206.00 |
| 319?2-3049 | *Sanchez, Martin | | | | | 15.08 | | | | | | | | 15.08 |
| | Total Dollars Paid | | | | | 1,236.16 | | | | | | | | 1,236.16 |

| Dues | | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.7500% | | | | | | 21.63 | | | | | | | | 21.63 |
| Total | | | | | | 21.63 | | | | | | | | 21.63 |

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
DISTINCTIVE CONCRETE LTD.
Case #: ChLab-0707-1434
Contract: CCA & *CCA
Year Ended: May, 2007

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 11/8/2007**

Page 4
Employees

Contributions computed by Amount per Hour

| SSN | Name | | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | *Nitti, Vito | Total Hours | | | | | | | 40.00 | | | | | | 40.00 |

### Rate Table

| | | DEC 2006 | Total |
|---|---|---|---|
| Welfare Fund | $7.4600 | 298.40 | 298.40 |
| Pension Fund | $4.8400 | 193.60 | 193.60 |
| Training Fund | $0.1700 | 6.80 | 6.80 |
| IAF | $0.0700 | 2.80 | 2.80 |
| LDC/LMCC | $0.1200 | 4.80 | 4.80 |
| LECET | $0.0600 | 2.40 | 2.40 |
| Total | | 508.80 | 508.80 |

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/8/2007

DISTINCTIVE CONCRETE LTD.
Case #: ChLab-0707-1434
Contract: CCA & *CCA

Year Ended: May, 2007

Page 5
Employees

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | *Nitti, Vito | | | | | | | 1,206.00 | | | | | | 1,206.00 |
| | Total Dollars Paid | | | | | | | 1,206.00 | | | | | | 1,206.00 |
| | | | | | | | | 21.11 | | | | | | 21.11 |
| Due | 1.7500% | | | | | | | 21.11 | | | | | | 21.11 |

## Levinson Simon & Sprung P.C.
## Payroll Audit Information Sheet

Page 1

| | | | |
|---|---|---|---|
| EMPLOYER'S NAME | Distinctive Conrete Ltd | EMPLOYER # | 31001 |
| ADDRESS | 1182 Crystal Shore Drive | PHONE # | 630-540-1790 |
| CITY STATE ZIP | Carol Stream | FAX # | *disconnected no further info* |
| EMAIL ADDRESS | n/a | FEIN | |
| DATE OF CONTRACT | | AUDIT PERIOD | |
| CONTACT'S NAME | Giacinta Nitti | TITLE | |
| PERSON FUND IS TO CONTACT | Giacinta Nitti | TITLE | Owner |
| ENTITY TYPE | Corporation | # OF EMPLOYEES | 9 |
| | | AVE # PER MONTH | 1 |

BUSINESS ACTIVITY | Concrete Construction

| | | | |
|---|---|---|---|
| Giacinta Nitti | Owner | 100.00 | 1182 Crystal Shore Drive Carol Stream, IL 60188 |
| | | | |
| | | | |
| | | | |

BANKING FACILITIES USED AND ACCOUNT NUMBER | Harris Bank | 8502062593

IS EMPLOYER STILL IN BUSINESS?  ☒ YES  ☐ NO ✗ *See note on second page*

DOES EMPLOYER HAVE INTEREST IN OTHER RELATED OPERATIONS?  ☐ YES  ☒ NO

IF YES, LIST NAMES OF SAME

IS EMPLOYER A MEMBER OF ANY TRADE ORGANIZATION/ASSOCIATION?  ☐ YES  ☒ NO

IF YES, LIST NAMES OF SAME

# Levinson Simon & Sprung P.C.
## Payroll Audit Information Sheet

Page 2

AUDIT DATE    | 10/26/07 |

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS    | Cecala & Associates 400 W Lake St.  Suite 218
Roselle, IL 60172 |

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF

| |

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY

| Under reported hours and wages for one previously reported individual. Under reported wages for two previously reported individual |

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO THE ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?    ☒ YES    ☐ NO

IF YES, EXPLAIN

| Contractor states that they are out of business and there is no payroll for 3rd quarter 2007 but  final tax return has not been filed |

AUDITOR    | Reid Karris |

LABORERS' PENSION & WELFARE FUNDS

Printed Date 1/2/2008

# LABORERS' PENSION & WELFARE FUNDS CONTRACTOR PENALTY HISTORY

| Contractor Number | 031001 |
|---|---|
| Contractor Name | DISTINCTIVE CONCRETE, LTD |
| Address | PO BOX 88330 |
| | CAROL STREAM IL, 601880330 |

| Phone | (630) 540-1790 |
|---|---|
| Status | Active |
| Outstanding Balance | $724.44 |

| Invoice # | Received Date | Report Month | Trans # | Penalty | Payment | Adjustment | Write Off | Welfare Penalty | Welfare Payment | Welfare Adjustment | Welfare Write Off | Pension Penalty | Pension Payment | Pension Adjustment | Pension Write Off |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27669 | 02/26/2007 | 12/2006 | 1223560 | $ 49.20 | $ - | $ - | $ - | $ 29.84 | $ - | $ - | $ - | $ 19.36 | $ - | $ - | $ - |
| 27565 | 02/08/2007 | 11/2006 | 1221678 | $ 196.80 | $ - | $ - | $ - | $ 119.36 | $ - | $ - | $ - | $ 77.44 | $ - | $ - | $ - |
| 27287 | 01/04/2007 | 10/2006 | 1218201 | $ 196.80 | $ - | $ - | $ - | $ 119.36 | $ - | $ - | $ - | $ 77.44 | $ - | $ - | $ - |
| 27026 | 11/22/2006 | 09/2006 | 1214693 | $ 246.00 | $ - | $ - | $ - | $ 149.20 | $ - | $ - | $ - | $ 96.80 | $ - | $ - | $ - |
| 25233 | 03/14/2006 | 10/2005 | 1190045 | $ 35.64 | $ - | $ - | $ - | $ 22.64 | $ - | $ - | $ - | $ 13.00 | $ - | $ - | $ - |
| | | | | $ 724.44 | $ - | $ - | $ - | $ 440.40 | $ - | $ - | $ - | $ 284.04 | $ - | $ - | $ - |

031001 - DISTINCTIVE CONCRETE, LTD



# Construction & General Laborers' District Council of Chicago and Vicinity Working Dues Fund

**LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092**

DISTINCTIVE CONCRETE, LTD
P.O. BOX 88330
CAROL STREAM, IL 60188

January, 2 2008
Contractor# 031001

Dear Contractor:

According to our records, your following report(s) were submitted late . As a result, you owe the Work Dues and Ancillary Funds an amount of $157.52 late fee.

| Report Month | Receipt Date | Total Gross Wage | Total Hours | Expected Amount | Remitted Amount | Expected Late Fee | Applied Late Fee | Unpaid Late Fee |
|---|---|---|---|---|---|---|---|---|
| 09/2005 | 01/09/2006 | $14,592.61 | 484.00 | $376.36 | $376.36 | $37.64 | $0.00 | $37.64 |
| 10/2005 | 01/09/2006 | $15,557.40 | 516.00 | $401.25 | $400.05 | $40.00 | $0.00 | $40.00 |
| 11/2005 | 01/09/2006 | $3,618.00 | 120.00 | $93.32 | $93.32 | $9.33 | $0.00 | $9.33 |
| 07/2006 | 08/30/2006 | $5,048.00 | 160.00 | $128.34 | $128.34 | $12.83 | $0.00 | $12.83 |
| 08/2006 | 10/13/2006 | $5,048.00 | 160.00 | $128.34 | $128.34 | $12.83 | $0.00 | $12.83 |
| 09/2006 | 11/20/2006 | $6,310.00 | 200.00 | $160.42 | $160.42 | $16.04 | $0.01 | $16.03 |
| 10/2006 | 01/15/2007 | $5,048.00 | 160.00 | $128.34 | $128.34 | $12.83 | $0.00 | $12.83 |
| 11/2006 | 02/12/2007 | $5,048.00 | 160.00 | $128.34 | $128.34 | $12.83 | $0.00 | $12.83 |
| 12/2006 | 03/01/2007 | $1,262.00 | 40.00 | $32.08 | $32.08 | $3.21 | $0.01 | $3.20 |

**Total Unpaid Late Fee**    **$157.52**

**\* Under Article VI, Paragraph 2, the Working Dues Report is due no later than the 10th of the month following the month for which such deductions were made.**

If you fail to remit the amount due, legal action may be initiated to collect this amount, and you will be liable for all attorney fees and court costs incurred to enforce your obligations.

Please send all your remittances to this address:

**LABORERS' DISTRICT COUNCIL
999 McClintock Drive, Suite 300
Burr Ridge, IL 60527
Attn: Denise Ayala**

# LABORERS' PENSION & WELFARE FUNDS

2/8/2008

AUDIT

EMPLOYER: DISTINCTIVE CONCRETE

CODE 31001

THE FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| | HOURS | WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDC/LMCC | RATE | IAF | RATE | CAICA | RATE | LECET | RATE | CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADDITIONAL HOURS 10-1-05 - 9-30-07 | 40.00 | 274.40 | 6.86 | 157.60 | 3.94 | 6.80 | 0.17 | 21.63 | 4.80 | 0.12 | 2.80 | 0.07 | - | | 2.40 | 0.06 | - | | 470.43 |
| ADDITIONAL HOURS 4-1-06 - 5-31-06, 9-1-06 - 5-31-07 | 40.00 | 298.40 | 7.46 | 193.60 | 4.84 | 6.80 | 0.17 | 21.11 | 4.80 | 0.12 | 2.80 | 0.07 | - | | 2.40 | 0.06 | - | | 529.91 |
| SUBTOTAL | 80.00 | 572.80 | | 351.20 | | 13.60 | | 42.74 | 9.60 | | 5.60 | | - | | 4.80 | | - | | 1,000.34 |
| 0% PENALTIES | | 57.28 | | 35.12 | | 1.36 | | 4.27 | 0.96 | | 0.56 | | - | | 0.48 | | - | | 100.03 |
| 0% PENALTIES LIQ. COSTS | | 415.04 | | 415.03 | | | | | | | | | | | | | | | 830.07 |
| ATTORNEY FEES | | - | | - | | | | | | | | | | | | | | | - |
| ACCUM. PENALTIES | | 440.40 | | 284.04 | | | | 157.52 | | | | | | | | | | | 881.96 |
| ACCUM. INTEREST | | 76.32 | | 45.65 | | 1.88 | | | 1.27 | | 0.76 | | - | | 0.69 | | - | | 126.57 |
| TOTAL DUE | | 1,561.84 | | 1,131.04 | | 16.84 | | 204.53 | 11.83 | | 6.92 | | - | | 5.97 | | - | | 2,938.97 |

REASON NOT REPORTED

EXHIBIT
B-7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and          )
LABORERS' WELFARE FUND OF THE       )
HEALTH AND WELFARE DEPARTMENT        )
OF THE CONSTRUCTION AND GENERAL      )
LABORERS' DISTRICT COUNCIL OF        )
CHICAGO AND VICINITY, and JAMES S.   )
JORGENSEN, Administrator of the Funds, )
                                     )
                    Plaintiffs,      )      Case No.:  08 C 319
        v.                           )
                                     )      Judge Dow
DISTINCTIVE CONCRETE LTD., an Illinois )
corporation,                         )
                                     )
                    Defendant.       )

## DECLARATION OF JERROD OLSZEWSKI

I, JERROD OLSZEWSKI, declare and state as follows:

1.      I am Funds Counsel for Plaintiffs Laborers' Pension Fund and Laborers'

Welfare Fund of the Health and Welfare Department of the Construction and General

Laborers' District Council of Chicago and Vicinity (the "Funds"), Plaintiffs in the above-

referenced action.  This Declaration is submitted in support of the Funds' Motion for

Judgment in Sum Certain against Defendant Distinctive Concrete Ltd.

2.      Shareholders of the law firms of Allison, Slutsky & Kennedy, and the Law

Offices of Marc Pekay, out-of-house collection counsel for the Laborers' Funds, bill the

Laborers' Funds at a rate of $175.00 per hour.  Affiant, as in-house counsel for the Funds

has first-hand knowledge that the hourly rate of $175.00 has been found reasonable and

has been awarded by many courts in collection proceedings.

3.      In house counsel Patrick T. Wallace received a Bachelor of Arts Degree



from the University of Illinois at Urbana- Champaign in 1992 and a Juris Doctor Degree

from the University of DePaul College of Law in 1995.  He was admitted to the bar of the

State of Illinois in November 1995 and to the bar of the United States District Court for

the Northern District of Illinois in December 1995.  He has also been admitted to the bar

of the United States District Court for the Central District of Illinois.  He was admitted to

the Trial Bar of the Northern District of Illinois on September 20, 2000.  From November

1995 to August 2000 he practiced labor and employment law as an associate at the law

firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur &

Eagle). In September 2000, he became Funds Counsel for the Laborers' Pension Fund and

Laborers' Welfare Fund for the Health and Welfare Department of the Construction and

General Laborers' District Council of Chicago and Vicinity.

4.    Jerrod Olszewski, in-house counsel for the Chicago Funds, received a

Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree

from the John Marshall Law School in 2002.  I was admitted to the bar of the State of

Illinois in May, 2002, and to the bar of the United States District Court for the Northern

District of Illinois in May, 2002.  From May, 2002 to December, 2004, I practiced labor

and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein

& Johnson, former out-of-house counsel to the Laborers' Funds, with the majority of my

work being spent representing the Laborers' Funds.  In December, 2004, I became in-

house counsel for the Funds.

5.    Based on the foregoing, $175.00 represents a fair and reasonable market

rate for my and Patrick T. Wallace's in-house legal services to the Funds in this matter.

6.    Christina Krivanek, in-house counsel for the Laborers' Funds, received a

2

Bachelor of Arts Degree from The Ohio State University in 2002 and a Juris Doctor Degree from the DePaul University College of Law in 2005. She was admitted to the bar of the state of Illinois in November 2005 and to the bar of the United States District Court for the Northern District of Illinois in January 2006. In January 2006, she became in-house counsel for the Laborers' Funds.

7.      Amy N. Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

8.      Based on the foregoing, $150.00 represents a fair and reasonable market rate for Christina Krivanek and Amy N. Carollo's in-house legal services to the Funds in this matter.

9.      Exhibit C-1 attached hereto sets forth the time expended to date by in-house counsel on this matter. As set forth in that Exhibit, we have expended 5.5 hours totaling $952.50 in attorneys' fees and $419.60 in costs totaling $1,372.10.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: 2/12/08

Jerrod Olszewski

3

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL  60154


Invoice submitted to:
Distinctive Concrete




February 12, 2008


Invoice #10067


Professional Services

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 1/11/2008 | JO | Corporate search, reviewed new lawsuit referral, lexis search | 0.50 175.00/hr | 87.50 |
| 1/14/2008 | JO | Telephone conference with auditor re: contact information; edited Complaint. | 0.50 175.00/hr | 87.50 |
| 1/7/2008 | ANC | Conference with PTW; call to Company. | 0.20 175.00/hr | 35.00 |
| 1/10/2008 | ANC | Draft Complaint. | 0.40 175.00/hr | 70.00 |
| 1/11/2008 | ANC | Draft Complaint; Conference with JO. | 0.60 175.00/hr | 105.00 |
| 2/1/2008 | JO | Letter to defendant | 0.30 175.00/hr | 52.50 |
| 2/4/2008 | JO | Read J. Dows, standing order | 0.50 175.00/hr | 87.50 |
| 2/12/2008 | JO | Edited J. Fosco's affidavit, order, Motion for Entry of Default Judgment, notice of motion and certificate of service | 0.50 175.00/hr | 87.50 |
| 2/7/2008 | JO | Reviewed file, reviewed docket, memo to Jim Fosco and fax, drafted Motion for Entry of Default Judgment, affidavit of Fosco, attorney declaration and order | 1.90 175.00/hr | 332.50 |
| 1/16/2008 | PGL | Letter to JAS | 0.10 75.00/hr | 7.50 |



EXHIBIT
C-1

Distinctive Concrete                                                           Page     2

|  |  | Hours | Amount |
|---|---|---|---|
| | For professional services rendered | 5.50 | $952.50 |
| | Additional Charges : | | |
| 1/14/2008 | Photocopies of Complaint, etc. | | 9.60 |
| | Filing fee. | | 350.00 |
| 1/17/2008 | Service of Summons and Complaint. | | 60.00 |
| | Total additional charges | | $419.60 |
| | Total amount of this bill | | $1,372.10 |
| | Balance due | | $1,372.10 |

## Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Amy N. Carollo | 1.20 | 175.00 | $210.00 |
| Jerrod Olszewski | 4.20 | 175.00 | $735.00 |
| Paralegal | 0.10 | 75.00 | $7.50 |

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that he caused a copy of the foregoing Motion for Entry of Default Judgment in Sum Certain to be served upon the individual listed below via U.S. Mail, postage pre-paid, on this 12th day of February, 2008.

Distinctive Concrete, Ltd.
c/o Gregory G. Castaldi, Registered Agent
5521 N. Cumberland Ave., Suite 1109
Chicago, IL  60656

/s/ Jerrod Olszewski

4